## Case No. 14,237.

### TUNNO v The MARY.

[Bee, 120.] [1]

District Court, D. South Carolina. Nov. 25, 1798.

**BOTTOMRY—UNDER WHAT CIRCUMSTANCES BOND VALID.**

A bottomry bond can be entered into by the master only under circumstances of great distress, and when he has no other means of repairing, &c.

[Cited in Leland v. The Medora, Case No. 8,-237; Joy v. Allen, Id. 7,552.]

In admiralty.

BEE, District Judge. This is a suit on a bottomry bond executed by Henry White, master of the ship Mary, in the port of London, November 9th, 1797, to John Tunno, for the sum of 1,466 pounds sterling; with a premium of thirty per cent. payable within ten days after the arrival of the ship in Charleston. A claim and answer are filed on the part of Asher Robins of Newport, Rhode Island, as

[1] [Reported by Hon. Thomas Bee, District Judge.]

owner of this ship at the date of the bond, and from the 19th July preceding. It is alleged that the said bond was not executed in good faith, nor upon the principles of maritime hypothecation; and the claimant prays that the libel may be dismissed with costs. The replication to this claim and answer, denies that Robins was owner of the Mary on the 19th of July, averring that she was at that time registered in the name of Cyprian Sterry, who held her as trustee for the joint account of himself, Tunno and Cox, and Miller and Robertson of Charleston, merchants. That although a bill of sale to Asher Robins might have been executed on that day, yet he was fully informed by Sterry of the trust aforesaid, and received the bill of sale subject to the equitable rights of the joint concern. That Henry White was appointed master by the said Tunno and Cox, and Miller and Robertson, with the full knowledge and approbation of said Sterry. The replication further states that the voyage from London to Charleston was not ordered by Tunno and Cox, and Miller and Robertson, but originated in necessity arising from the unexpected failure of Sterry, and his inability to advance funds for a different voyage, which had been contemplated by the owners of the ship previously to her leaving Charleston. It is admitted that John Tunno was the usual correspondent of Tunno and Cox, and Miller and Robertson, in London; but was totally unknown to Sterry or Robins. That at the time of the execution of the bond he had no money in his hands of Sterry or Robins, nor of Tunno and Cox, or Miller and Robertson, after appropriation of the out-freight of the ship from Charleston to London; nor could the captain have raised any on the personal credit of his employers. He was, therefore, under the necessity of thus pledging the ship. A rejoinder to this replication denies that Tunno and Cox, and Miller and Robertson were joint owners of the ship, insisting that Robins is sole owner by legal conveyance of 19th July, 1797, from the former registered owner. It also denies that Robins, at the time of sale and advancing of his money, had any notice of any interest or claim to the ship, in Tunno and Cox, and Miller and Robertson. It states that John Tunno received £1188 8s. 10d. for the out-freight of the vessel, that he was the usual correspondent and agent of Tunno and Cox, and Miller and Robertson; and that he acted under their orders, touching the ship and cargo. There are other allegations on both parts which do not appear to be material. A number of exhibits have been filed, and the evidence of Mr. Russel taken, vivà voce, in court.

The point for my decision is, whether this bond creates such a lien on this vessel as to give jurisdiction to the court. The law respecting hypothecation requires that it be the voluntary act of the master when and where money was advanced for necessaries or repairs. The money ought to be advanced solely on the faith of the hypothecation and not on any personal credit, in a foreign port, and in such distress as that the voyage could not be completed without it. It appears that this ship sailed from this port about the 25th July, 1797, bound to London; that at the time of her sailing she was owned by Sterry, Tunno and Cox, and Miller and Robertson; that she had completed her lading on the 18th July; and, on the 19th, Sterry who resided in Rhode Island, sold his right in her and her earnings from a period antecedent, to Robins, the present claimant. His letter of the 29th July to Miller and Robertson, received by them on the 13th August, was the first notice they had of the sale. It appears, however, by a letter from Tunno and Cox to John Tunno, of the 5th August, that they had advice of Sterry's failure, on that day. I have called these gentlemen joint owners with Sterry of this ship, and I am authorized to do so by the exhibits, among which are Sterry's accounts between himself and them as joint owners of the vessel; a letter from Miller and Robertson to Sterry after the ship was loaded, in which they express a purpose of purchasing a further share in her; Robins' letter to them, in which he says: "Mr. Sterry informs me that, by contract, your house are owners of one third of the ship; I wish to know if you would not be inclined to take the whole ship to your account, and on what terms." The question of law, arising under the act of congress on the assignment and change of the register, is for another tribunal, and it would be improper that I should anticipate its decision. There is sufficient proof before me as to the acts of ownership of Tunno and Cox, and Miller and Robertson, on which to found my present decree.

I will proceed to consider the evidence, after the ship was loaded, and after she had sailed. The captain's instructions are dated on the 18th July, and contain as clear and positive a consignment of vessel, cargo, and captain as could be devised. "When you arrive, you will deliver the ship's papers to John Tunno, under whose directions you are on that side the water; his orders you will attend to, and no other. He will furnish money and necessaries for the ship, according to the voyage she goes upon, also yourself with what you may have occasion for. You are to consider yourself as fully under his instructions as if we were present, being our friend and attorney." Miller and Robertson in a letter to Sterry, 18th July, say: "The ship Mary is bare of sails, a new suit must be furnished in London, and will, with outfits, take all the freight." It is evident, then, that at this period, freight was contemplated as the fund for outfits in London for another voyage, and it was not till the 5th August, ten days after she sailed, that the orders were given to appropriate the freights in equal parts to Tunno and Cox, and Miller and Robertson; and this in consequence of advice that Sterry had failed. But we find the bill of sale from Sterry

to Robins dated on the 19th July preceding, so that Robins was owner of Sterry's share at the time this order is given to appropriate the freight. This surely cannot bind Robins, who was entitled to two thirds of the freight when the ship arrived in London, from which fund all necessary repairs and outfits might have been made  The whole freight to London amounted to £1188. Two thirds of this make £792. The whole disbursements are £975. Two thirds of these are £650, which, deducted from £792, leaves a balance of £142 in favour of Mr. Robins, for his share of freight earned. Where, then, is any ground of maritime hypothecation, which, as I have already stated, can only arise out of an invincible necessity? I see none; and do, therefore, adjudge and decree that the libel be dismissed with costs.